# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ANTONIO THOMAS<br><br>Petitioner,<br><br>v.<br><br>DONALD GAETZ, Warden,<br><br>Respondent. | No. 08 C 4113<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Antonio Thomas ("Petitioner") is serving a 60-year sentence for aggravated kidnapping and attempted armed robbery. He has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his conviction. (R. 1, Pet.) Warden Donald Gaetz ("Respondent")[1] argues that this Court should deny the Petition because Petitioner's claims are procedurally defaulted or not cognizable in this proceeding. (R. 19, Answer at 11-22.) For the reasons stated below, the Petition is denied.

---

[1] At the time the Petition was filed, Petitioner identified Warden Donald Hulick as the authorized person having custody of Petitioner. (R. 1, Pet. at 1.) Respondent informs this Court that Petitioner is in the custody of Warden Donald Gaetz. (R. 2, Answer at 1.) The Court therefore substitutes Warden Gaetz for the previously named respondent. *See Rumsfield v. Padilla*, 542 U.S. 426 (2004).

1

## RELEVANT FACTS [2]

On March 27, 1999, the body of Quinton Kirkwood ("Kirkwood") was found in a rear basement stairwell at 1648 S. Christiana Avenue in Chicago, Illinois. (R. 20, Record, Ex. F, Ill. App. Ct. Order at 1.) Kirkwood had been shot to death. (*Id.*) Jeff Henderson ("Henderson") was arrested on March 28, 1999, and gave a statement that implicated Petitioner in the Kirkwood crime. (*Id.*)

In the statement, Henderson stated that he and several other people, including Petitioner and his brother, Duel Thomas ("Duel"), were in the apartment of Frederick Laws ("Laws") at 8 p.m. on March 26, 1999. (*Id.* at 2.) Petitioner and Duel learned that Kirkwood was playing dice in another apartment, had won about $9,000 and decided that he would be a good target for a robbery. (*Id.*) Petitioner gave Henderson a set of keys and told him to go get a car that was parked nearby. (*Id.*) Henderson got the car and parked it in front of the building where the dice game was being held. (*Id.*) About ten minutes later, Henderson saw Petitioner walking Kirkwood at gunpoint from the building and then pushing him into the trunk of the car and closing the lid. (*Id.*) Petitioner then ordered Duel and Henderson to get inside the car. (*Id.*)

Next, Henderson stated that Petitioner drove to an alley where he stopped and opened the trunk. (*Id.*) Petitioner and Duel grabbed Kirkwood and walked him to a cemented area under the porch of a building, where they demanded money. (*Id.*) Kirkwood used a cell phone to call his relatives and ask for money. (*Id.*) Henderson heard Kirkwood tell his relatives he had lost

---

[2] The facts are taken from the Petition and portions of the state court record Petitioner and Respondent have provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The state court's determination of factual issues is presumed correct unless Petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

money at a dice game, needed more money, and was sending someone to get the money. (*Id.*)

Henderson then went to Kirkwood's relatives' house but the relative refused to give him the money. (*Id.*) Henderson returned to the location where Petitioner and Duel were still holding Kirkwood at gunpoint. (*Id.*) When Henderson informed Petitioner and Duel that no money was given to him, Kirkwood asked to call his relatives again. (*Id.*) Petitioner dialed the number and handed the phone to Kirkwood as Duel shot Kirkwood multiple times. (*Id.*) Then Petitioner shot Kirkwood multiple times. (*Id.*) Duel fled on foot, while Henderson and Petitioner drove away in the car. (*Id.*)

On March 29, 1999, Petitioner was arrested. (*Id.*) Petitioner was tried concurrently before separate juries with Duel and another co-defendant.[3] (*Id.* at 3.) Among other evidence, the State produced Henderson to testify against Petitioner. (*Id.* at 3-7.) The State also produced two witnesses, Laws and Ronnie Wheatley ("Wheatley"), to corroborate parts of Henderson's testimony. (*Id.* at 8-10.) Laws testified that he heard Petitioner discussing a plan to rob Kirkwood. (*Id.* at 8.) Wheatley testified that he saw Petitioner abduct Kirkwood at gunpoint. (*Id.*)

However, when Henderson was called to testify, he recanted his previous statement and the testimony he had given at his own trial.[4] (*Id.* at 3.) Although he admitted to previously implicating Petitioner, Henderson claimed that it was a "lie" and that the written statement was "made up" by the Assistant State's Attorney. (*Id.*) Henderson testified that the truth was that he

---

[3] The other co-defendant, James Williams, was not involved in the issues raised in the Petition.

[4] Henderson's trial occurred before Petitioner's trial. (R. 20, Record, Ex. F, Ill. App. Ct. Order, at 3.) The testimony he gave at his own trial closely mirrored the original statement he gave to police implicating Petitioner in the shooting. (*Id.*)

3

alone forced Kirkwood at gunpoint into the trunk of a car and tried to rob him. (*Id.* at 4.) Henderson also admitted to previously testifying that he was a member of the Black Souls street gang and that the primary rule of the gang was "to never disown one of your brothers" and "to always look up to your older brother and never disobey the mob, never go against the grain." (*Id.* at 3-4.) During closing arguments, the State argued that Henderson offered a true account of the Kirkwood crime at his own trial, but lied at Petitioner's trial. (*Id.*, Ex. O, Tr. at Y89, 117.) The jury convicted Petitioner of aggravated kidnapping and attempted armed robbery, but acquitted him of first degree murder. (*Id.*, Ex. F, Ill. App. Ct. Order at 13.) He was sentenced to 60 years' imprisonment. (*Id.*)

On May 19, 2003, Petitioner appealed his conviction to the Illinois Appellate Court raising the following five claims: (1) the jury's acquittal on first degree murder was legally inconsistent with the convictions for aggravated kidnapping and attempting armed robbery and thus as a matter of law, the evidence against him was insufficient; (2) the trial court erred when it admitted gang evidence related to Henderson's testimony and the testimony of several other witnesses; (3) prosecutorial misconduct occurred; (4) the admission of the prior testimony and statement of Henderson violated Petitioner's right to confront witnesses under the Sixth Amendment; and (5) the evidence was insufficient in that it was based solely on hearsay evidence. (*Id*, Ex. A, Def.-Appellant's Br. at 8-9, Ex. C, Supplemental Authority and Argument.) On October 25, 2004, the appellate court affirmed Petitioner's conviction. (*Id.*, Ex. F, Ill. App. Ct. Order at 1.) Petitioner then filed a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court in which he raised all of these same arguments, except for the Sixth

Amendment claim related to the testimony of Henderson. (*Id.*, Ex. G, Pet. For Leave To Appeal at 7-13.) On March 30, 2005, the PLA was denied. (*Id.*, Ex. H, Ill. Order.)

On November 23, 2005, Petitioner filed a *pro se* post-conviction petition in state court in which he made six arguments: (1) the police lacked probable cause to arrest him; (2) the admission of Detective Thomas McGreal's ("McGreal") testimony at a pretrial hearing violated his right to confront witnesses under the Sixth Amendment; (3) the trial court erred in allowing the trial to continue after the jury overheard conversations between the prosecutors, and when it removed Petitioner's jury during part of the cross-examination of a witness by co-defendant's counsel; (4) the evidence was insufficient as a matter of law; (5) Petitioner's trial counsel was ineffective in failing to: (a) file a motion in support of his request for severance, (b) object to leading questions by the prosecutor, (c) move for the admission into evidence of police investigative reports, and (d) move for a mistrial after the jury overheard conversations between the prosecutors; and (6) Petitioner's appellate counsel was ineffective in failing to raise issues one through three (as listed above) in Petitioner's direct appeal. (*Id.*, Ex. I, Pet. for Post Conviction Relief at 8-9.) On December 20, 2005, Petitioner's post-conviction petition was denied. (*Id.*, Ex. J, Cir. Ct. Order.) Petitioner then appealed to the Illinois Appellate Court, which affirmed.[5] (*Id.*, Ex. L, Ill. App. Ct. Order.) On October 19, 2007, Petitioner filed a *pro se* PLA to the Illinois Supreme Court that argued the following: (1) the judge erred in admitting gang evidence; (2) the admission at a pretrial hearing of Detective McGreal's testimony describing the identification of the Petitioner during a lineup by Pryor, violated Petitioner's right

---

[5] The State Appellate Defender, who was appointed to represent Petitioner, filed a motion for leave to withdraw based on his conclusion that an appeal was "frivolous." (*Id.*, Ex. K, Mot. to Withdraw.) Leave to withdraw was granted by the appellate court. (*Id.*, Ex. L, App. Ct. Order.)

5

to confront witnesses under the Sixth Amendment; (3) trial counsel was ineffective in failing to move to sever Petitioner's trial; and (4) appellate counsel was ineffective in failing to raise issues one through three (as listed directly above) in Petitioner's post-conviction petition.[6] (*Id.*, Ex. M, Pet. For Leave To Appeal at 3-8.) On January 30, 2008, the PLA was denied. (*Id.*, Ex. N, Ill. Order.)

## PROCEDURAL HISTORY

On July 21, 2008, Petitioner filed the instant Petition with this Court raising six claims for relief. (R. 1, Pet.) Petitioner raises two ineffective assistance claims based on trial counsel's failure to: (1) call two witnesses, Beatrice and Latrice Applewhite, and (2) move for a mistrial after the admission of gang evidence. (*Id.* at 5-6.) Petitioner also raises an ineffective assistance claim based on appellate counsel's failure to challenge the severity of Petitioner's sentence on direct appeal. (*Id.* at 6.) Petitioner also brings two Sixth Amendment claims that his right to confront witnesses was violated by the admission of: (1) Henderson's prior testimony and statements, and (2) Detective McGreal's testimony describing the identification of the Petitioner by Pryor. (*Id.* at 8-9.) Finally, Petitioner claims that the jury's acquittal on first degree murder was legally inconsistent with the convictions for aggravated kidnapping and attempting armed robbery, and that he was not proven guilty beyond a reasonable doubt. (*Id.* at 9-13.) Respondent argues that the Petition should be denied because Petitioner's claims are procedurally defaulted or not cognizable in this proceeding. (R. 19, Answer at 11-22.) Petitioner has filed a reply in support of his Petition. (R. 22, Pet'r Reply.)

---

[6] The Court notes that a page appears to be missing from Petitioner's PLA, however, this does not affect the outcome of the Petition. (*See id.*, Ex. M, Pet. For Leave To Appeal.)

## LEGAL STANDARDS

Under the Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief to prisoners in state custody. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). The Court may grant habeas relief only if the state court's adjudication of a petitioner's constitutional claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. U.S.C. § 2254(d)(1); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Under this standard the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000).

A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "unreasonable application" clause of the AEDPA, the petitioner must demonstrate that the state court identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). A state court's decision must be "well outside the boundaries of permissible differences of opinion" to be objectively unreasonable. *Watson*, 560 F.3d at 690.

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel

Petitioner first argues that trial counsel was ineffective in: (1) failing to investigate and call two witnesses, Beatrice and Latrice Applewhite, and (2) failing to move for a mistrial after the admission of gang evidence. (R. 1, Pet. at 5-6.) Under *Strickland v. Washington*, 466 U.S. 668 (1984), to establish ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687.

Before considering the merits of a habeas petition, however, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must "fairly present" his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004). To satisfy this requirement, an Illinois prisoner such as Petitioner must raise his claims in the Illinois Appellate Court as well as in a petition for discretionary review in the Illinois Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state

8

law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Gonzales*, 565 F.3d at 380.

Upon review of the state court record, it is clear that Petitioner did not raise the ineffective assistance of trial counsel claims contained in this Petition at the state court level. (*See* R. 20, Record, Ex. I, Pet. for Post Conviction Relief & Ex. M, Pet. For Leave To Appeal.) Although Petitioner argued that trial counsel was ineffective in his post-conviction petition, his argument did not include claims related to counsel's failure to investigate and call Beatrice and Latrice Applewhite, or to move for a mistrial after the admission of gang evidence.[7] (*Id.*) Each ground of a ineffective assistance claim is considered separate, and "the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Thus, Petitioner's claims of ineffective assistance of counsel are now procedurally defaulted. *See id.* (a habeas petitioner procedurally defaulted one of his ineffectiveness of counsel claims even though he raised ineffectiveness claims to the state courts based on other grounds.).

---

[7] Petitioner claims that he did argue "about the Applewhites" in his petition for post-conviction relief. (*See* R. 22, Pet'r Reply at 1.) Petitioner, however, merely mentions the names of Beatrice and Latrice in the context of other arguments. (*See* R. 20, Record, Ex. I, Pet. for Post Conviction Relief at 11, 17.) This does not constitute raising an ineffective assistance claim based on trial counsel's failure to call and investigate the Applewhites. *See Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001) (determining that "fair presentment" requires the petitioner to "have placed both the operative facts and the controlling legal principles before the state courts"; a mere "passing reference" to a constitutional issue will not suffice.).

Nevertheless, a court may review a procedurally defaulted claim if the petitioner demonstrates cause for the default and actual prejudice, or shows that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Gonzales*, 565 F.3d at 381. The Supreme Court defines "cause" sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Guest*, 474 F.3d at 930. "Prejudice is established if the issue not raised may have resulted in a reversal of the conviction or an order for a new trial." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

Here, Petitioner attempts to establish "cause" by arguing that appellate counsel "refused" to raise these "viable claims." (R. 22, Pet'r Reply at 3.) "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). However, the ineffective assistance claim must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id.* While Petitioner did assert an ineffective assistance of appellate counsel claim in his post-conviction petition, this claim was not based on appellate counsel's failure to raise the issues concerning trial counsel not investigating and calling the Applewhites, or moving for a mistrial after the admission of gang evidence. (*See* R. 20, Record, Ex. I, Pet. for Post Conviction Relief & Ex. M, Pet. For Leave To Appeal.) Therefore, Petitioner did not properly present this as a claim to excuse his procedural default. *See Stevens*, 489 F.3d at 894.

Next, Petitioner argues that the Court should excuse his default and reach the merits of his claims because he has presented "sufficient evidence of actual innocence." (R. 22, Pet'r Reply at 3.) A fundamental miscarriage of justice occurs when a petitioner establishes that a

10

constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 299 (1995). To demonstrate actual innocence, a petitioner must support his allegations "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. 298 at 324; *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). The habeas petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

Petitioner argues that the police reports based on the Applewhites' description of the events of March 26, 1999, qualify as evidence that would preclude a reasonable juror of finding him guilty beyond a reasonable doubt. (R. 22, Pet'r Reply at 3.) In the first report, Beatrice Applewhite stated that on the night of Kirkwood's murder she heard gunshots and saw a person standing at the top of the stairs, who she described as being a black male, between five foot, three inches and five foot, four inches tall, and a 150 pounds. (R. 1, Pet., Ex. A.) In the second report, Latrice Applewhite stated on the night of Kirkwood's murder she heard gunshots and saw a person getting into a car. (*Id.* at Ex. B.) She described the person as a black male, twenty-three to twenty-eight years old, between five foot, six inches and five foot, eight inches tall, and a medium build. (*Id.*) Petitioner argues that he "does not fit" these descriptions, and thus "was not the person they saw kidnap [Kirkwood] the night of March 26, 1999." (*Id.* at 5.)

Petitioner falls well short of the high standard for demonstrating actual innocence. In light of the other evidence produced at trial, these police reports on their own are not enough to meet the extremely high standard of actual innocence. *Schlup*, 513 U.S. at 324 (noting that actual innocence claims "are rarely successful" due to the difficulty of finding evidence to meet the high standard). Therefore, Petitioner's procedural default will not be excused.

## II. Ineffective Assistance of Appellate Counsel

Petitioner next asserts that appellate counsel was ineffective in failing to challenge his sentence on direct appeal on the grounds that the sentence was overly harsh and "unfairly disparate." (R. 1, Pet. at 6-7.) Again, Petitioner's claim of ineffective assistance of counsel is procedurally defaulted. The procedural default doctrine requires that Petitioner raise the specific ground for the claim in one complete round of review in state court. *See Stevens*, 489 F.3d at 893-94. Although Petitioner raised an ineffective assistance of appellate counsel claim in state court, he never argued that appellate counsel was ineffective for failing to challenge his sentence on direct appeal. (*See* R. 20, Record, Ex. I, Pet. for Post Conviction Relief & Ex. M, Pet. For Leave To Appeal.) Therefore Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted.

## III. Admission of Henderson's Testimony and Prior Statements

In his next claim, Petitioner asserts that the admission of Henderson's prior testimony and statement violated his right to due process under the Fifth, Sixth, and Fourteenth Amendments. (R. 1, Pet. at 8-9.) Petitioner argues that the use of Henderson's trial testimony was "prejudicial" and "overwhelmed" the trial. (*Id.* at 8.) Respondent argues that Petitioner derives this claim from the Sixth Amendment right to confront witnesses and is procedurally defaulted because this

12

issue was not raised with the Illinois Supreme Court. (R. 2, Resp't Answer, at 13-14.) The Court agrees that Petitioner's Sixth Amendment claim is procedurally defaulted, because no such claim was raised in a complete round of state review. *See Stevens*, 489 F.3d at 893-894. However, because Petitioner also brings this claim under the Fourteenth Amendment, he could be raising a claim stemming from a due process violation. (*See* R. 1, Pet. at 8-9.) In essence, that he was denied a fair trial based on the trial court's admission of gang evidence through Henderson's testimony. This claim is not procedurally defaulted. (*See* R. 20, Record, Ex. A, Def.-Appellant's Br. at 28-36 & Ex. G, Pet. For Leave To Appeal at 8-10.) The Court will construe the Petition liberally and read the claim as a due process violation under the Fourteenth Amendment. *See Lieberman v. Thomas*, 505 F.3d 665, 671 (7th Cir. 2007) (habeas petitioner's *pro se* filings were entitled to liberal construction).

"Due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Perruquet*, 390 F.3d at 510-11. In a habeas challenge, it is not the court's duty to balance the probative value of certain evidence against its unfair prejudice. *Anderson v. Sternes*, 243 F.2d 1049, 1055 (7th Cir. 2001). Rather, the court must determine whether the alleged unfair prejudice denied the petitioner due process, such that "but for the errors, the outcome of the trial probably would have been different." *Id.* (citations omitted).

During Petitioner's trial Henderson admitted to previously testifying that he was a member of the Black Souls street gang and that the primary rule of the gang was "to never disown one of your brothers" and "to always look up to your older brother and never disobey the

mob, never go against the grain." (R. 20, Record, Ex. F, Ill. App. Ct. Order at 3-4.) Henderson never testified that Petitioner was a member of a gang. (*Id.*, Ex. O, Tr. at V1-271.) The trial court only admitted the gang evidence for impeachment purposes. (*Id.* at V226-227.) Moreover, the court clearly instructed the jury that "[t]here is no evidence or inference or argument that this homicide in any way was gang related," and that the evidence was being offered "for the limited purpose only of evaluation of the credibility of this witness as well as the consideration of any argument of any arguments concerning his motivation." (*Id.* at V261.)

In concluding that Petitioner was not denied a fair trial based on this evidence, the Illinois Appellate Court determined that "there was probative value in the evidence that Henderson and Duel had a common gang affiliation because it showed Henderson's bias and motivation to change his original testimony to testimony exculpating [Petitioner] as well as Duel." (*Id.*, Ex. F, Ill. App. Ct. Order at 23.) Moreover, the appellate court concluded that the limited scope of admission and the trial court's instruction to the jury combined to reduce the risk of unfair prejudice to Petitioner, therefore the admission of evidence that Henderson and Duel shared a common gang affiliation was not in error. (*Id.*)

It is well established under Illinois law that "evidence of gang affiliation need not be excluded if it is otherwise relevant and admissible." *People v. Blue*, 792 N.E.2d 1149, 1156 (Ill. 2001). Moreover, in some cases, "evidence of gang affiliation is sufficiently probative of bias to warrant its admission." *Id.* Similarly, the Seventh Circuit has recognized that under appropriate circumstances, evidence of gang membership has probative value that can outweigh claims of undue prejudice. *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004). Accordingly, Petitioner has failed to establish that the Illinois Appellate Court unreasonably

applied the controlling law to the facts of his case or that the Illinois court's decision was "contrary to" clearly established federal law. *Bell*, 535 U.S. at 694. Therefore, habeas relief on this claim is denied.

## IV. Admission of McGreal's Testimony at Pre-trial Hearing

Next, Petitioner asserts that the admission of Detective McGreal's testimony describing Pryor's identification of Petitioner in a lineup violated his right to confront witnesses under the Sixth Amendment. (R. 1, Pet. at 10.) McGreal testified at the pretrial hearing in Petitioner's motion to quash his arrest and suppress identification evidence. (R. 20, Record, Ex. K., Mot. to Withdraw at 12.) McGreal testified that Pryor identified Petitioner in a lineup as the person he saw putting Kirkwood in the trunk of the car. (R. 1, Pet. at 10.) Even though McGreal never testified to Pryor's identification during Petitioner's trial, Petitioner argues that because Pryor "was never called to court to testify, and corroborate this fact" at the pretrial hearing, McGreal's testimony "should have been declared inadmissable." (*Id.*) Respondent argues that Petitioner is not entitled to relief on this claim because the appellate court's decision, rejecting this claim, was "neither contrary to, nor an unreasonable application of, Supreme Court precedent." (R. 19, Answer at 14.)

In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that in a criminal prosecution, the Sixth Amendment prohibits the introduction of an out-of-court testimonial statement unless the witness is unavailable and the defendant has previously had an opportunity to cross-examine him. *Crawford,* 541 U.S. at 59. The Supreme Court, however, has never addressed whether the Sixth Amendment confrontation right discussed in *Crawford*

extends to pretrial probable cause hearings. Likewise, the Seventh Circuit has not decided the issue.[8]

Because the Supreme Court has not held that *Crawford* applies to pre-trial hearings, it cannot be said that the appellate court's decision was contrary to, or an unreasonable applicable of clearly established federal law.[9] *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court . . . it cannot be said that the state court unreasonably applied clearly established Federal law."); *see also Calloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008) (habeas claim failed because there was no clearly established Supreme Court precedent to support petitioner's argument that he was entitled to an additional jury instruction.). Therefore, Petitioner's claim is denied.

## V.    Sufficiency of the Evidence

Finally, Petitioner claims that the evidence was insufficient to convict him. (R. 1, Pet. at 9-13.) First, Petitioner argues that the jury's acquittal on first degree murder conflicts with his convictions for aggravated kidnapping and armed robbery and that the inconsistent verdicts demonstrate that the evidence against him was insufficient as a matter of law. (*Id.* at 9.) Secondly, Petitioner asserts that "he was not proven guilty beyond a reasonable doubt" and that

---

[8] Numerous circuits have held that *Crawford* is not applicable to pretrial hearings. *See, e.g., United States v. Del Rosario*, 388 F.3d 1, 12 n. 5 (1st Cir. 2004)(not applicable during suppression hearings); *United States v. Miramonted*, 365 F.3d 902, 904 (10th Cir. 2004)(not applicable during suppression hearings). *See also United States v. Martinez*, 413 F.3d 239, 242-243 (2d Cir. 2005) (not applicable in sentencing proceedings); *United States v. Martin*, 382 F.3d 840, 844 n.4 (8th Cir. 2004)(not applicable in supervised release revocation hearing).

[9] Moreover, this Court is guided by the principle that the Sixth Amendment right to confrontation is a "trial right." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987).

"the State produced scant evidence" to sustain a conviction for aggravated kidnapping and attempted armed robbery. (*Id.* at 11.)

With regard to the first argument, the Court notes that the verdicts in this case were not necessarily "inconsistent." The jury convicted Petitioner of aggravated kidnapping and attempted armed robbery, but acquitted him of first degree murder. (R. 20, Record, Ex. F, Ill. App. Ct. Order at 13.) The murder occurred after the kidnapping and attempted robbery and was based primarily on the statement and prior testimony of Henderson. (*Id.* at 2-7.) In addition to the testimony of Henderson, the kidnapping and attempted robbery were corroborated by Laws and Wheatley. (*Id.* at 8-10.) Thus the jury could have reasonably found that there was sufficient evidence that Petitioner kidnaped and attempted to rob Kirkwood, but insufficient evidence that he murdered Kirkwood.

Moreover, the appellate court noted that "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges." (R. 20, Record, Ex. F, Ill. App. Ct. Order at 13 (quoting *People v. Jones*, 797 N.E.2d 640, 647 (Ill. 2003)).) This holding is not contrary to or an unreasonable application of clearly established federal law because there is no federal right to a consistent verdict. *United States v. Powell*, 469 U.S. 57, 62 (1984). To the contrary, the Supreme Court has clearly stated that inconsistent verdicts are allowed to stand. *See City of Los Angeles v. Heller*, 475 U.S. 796, 804 (1986); *Standefer v. United States*, 447 U.S. 10, 25 (1980). Therefore, relief is not available on this ground. *See Mahaffey v. Schomig*, 294 F.3d 907, 921 (7th Cir. 2002) (petitioner not entitled to habeas relief on the ground that verdicts were legally inconsistent).

17

Petitioner's second argument, that there was insufficient evidence of his guilt, also fails. This Court may only grant habeas relief on an insufficient evidence claim if the petitioner can show that no rational trier of fact, "viewing the evidence in the light most favorable to the prosecution . . . could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Morrison*, 207 F.3d 962, 966 (7th Cir. 2000). The Illinois Appellate Court applied this standard when it analyzed and rejected Petitioner's claim.[10] (R. 20, Record, Ex. F, Ill. App. Ct. Order at 18.)

The appellate court relied on Henderson's statement as sufficient evidence to convict Petitioner of both aggravated kidnapping and attempted armed robbery.[11] (*Id.* at 18-19.) Specifically, the appellate court determined that the evidence established that Petitioner used force, or the threat of imminent force, by taking Kirkwood from the apartment building into the trunk of a car at gunpoint, and attempted to rob Kirkwood at gunpoint by forcing him to call relatives for money. (*Id.* at 19.) Further supporting the guilty verdict is the corroborating testimony of Laws and Wheatley. (*Id.*, Ex. O, Tr., at A10-13, 58-87.) Laws testified that he heard Petitioner planning to rob Kirkwood, and Wheatley testified that he saw Petitioner abduct Kirkwood at gunpoint. (*Id.*) Considering this evidence, the appellate court's decision is not

---

[10] The appellate court applied the *Jackson* standard as set forth in *People v. Tenney*, 793 N.E.2d 571 (Ill. 2002). (*See* R. 20, Record, Ex. F, Ill. App. Ct. Order at 18 ("We consider the evidence in the light most favorable to the prosecution and determine if any rational fact finder could have found the defendant guilty beyond a reasonable doubt.").)

[11] A person commits aggravated kidnapping when, while armed with a firearm, and by force or threat of imminent force, carries a person from one place to another, intending to confine that person against his or her will. 720 ILCS 5/10-2(a)(6). A person commits attempted armed robbery when he performs an act constituting a substantial step toward the commission of an armed robbery, which requires taking property from a person, by the use of force or the threat of imminent force, while armed with a firearm. 720 ILCS 5/8-4(a); 720 ILCS 5/18-2(a)(2).

18

contrary to, or involved an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the Illinois court proceeding. Accordingly, this claim is denied.

## CONCLUSION

For all of these reasons, the Petition for Writ of Habeas Corpus (R. 1) is denied.

ENTERED: *[signature]*

**Judge Ruben Castillo**
**United States District Court**

**Dated: July 16, 2009**